**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ARVEST BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-03175-CV-S-DGK |
| vs. | ) | |
| | ) | |
| RAJU V. UPPALAPATI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This case arises from a series of loans made by Plaintiff Arvest Bank to Branson Resort Properties, LLC, which were guaranteed by Defendants R&E Capital Investment, LLC, Raju Uppalapati, Vijayasree Uppalapati, and Eric Avery. Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 52) and Defendants' Response (Doc. 56). Having fully considered the parties' arguments, the Court grants Plaintiff's motion.[1]

### Background

Arvest Bank ("Arvest") is a state chartered bank with its principal place of business in Fayetteville, Arkansas. R&E Capital Investments, LLC ("R&E Capital") is a North Carolina limited liability company which owns one hundred percent (100%) of Branson Resort Properties, LLC ("Branson Properties"), a Missouri limited liability company. Raju Uppalapati ("Mr. Uppalapati") and Eric Avery ("Mr. Avery") each own fifty percent (50%) of R&E Capital. Vijayasree Uppalapati ("Mrs. Uppalapati") is married to Raju Uppalapati. She is not, and never

---

[1] In ruling on the pending motion, the Court has also considered Plaintiff's Legal Memorandum in Support of Motion for Summary Judgment (Doc. 53) and Plaintiff's Reply Suggestions in Support of Motion for Summary Judgment (Doc. 58).

has been, an employee, officer, manager, director, or member of Branson Properties or R&E Capital.

Branson Properties was the owner and developer of a real estate development project known as "the Legends at Branson Creek." The Legends at Branson Creek consisted of approximately 15 acres of land subdivided into 57-63 residential lots located south of Branson in Taney County, Missouri.

On November 6, 2006, Arvest loaned Branson Properties $2,821,594.00 for the development of 62 lots in the Legends at Branson Creek. On this same day, Defendants R&E Capital, Mr. Uppalapati, Mrs. Uppalapati, and Mr. Avery each executed and delivered to Plaintiff a personal Guaranty whereby each Defendant absolutely and unconditionally guaranteed the payment and performance of every debt and obligation of Branson Properties. On February 6, 2008, Arvest made three additional loans to Branson Properties in the amounts of $269,200.00, $197,153.49, and $272,800.00.

Arvest and Branson Properties subsequently entered into a series of "Debt Modification Agreements" extending all four of the loans. Each of the Notes is now in default for, among other things, failure to pay interest due on December 6, 2009 and failure to pay the loans at maturity on January 6, 2010. On March 11, 2010, counsel for Arvest demanded payment of the amounts due on all the Notes from Branson Properties and each of the Defendant guarantors. To date, Defendants have failed to pay the amounts due.

**Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

2

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and must afford the nonmoving party "the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

### I. Summary judgment is granted against Defendants R&E Capital, Eric Avery, and Raju Uppalapati.

The Court first notes that Plaintiff's motion for summary judgment sought judgment as to all four Defendants on all claims in the Complaint (Doc. 52 at 2-3). In their response, Defendants do not oppose summary judgment as to three of the four Defendants: R&E Capital, Mr. Avery, and Mr. Uppalapati. Accordingly, summary judgment is granted against them.

### II. Summary judgment is granted as to Mrs. Uppalapati.

Defendants oppose summary judgment only as to Mrs. Uppalapati. Defendants do not contest the validity of Mrs. Uppalapati's signatures on the Notes and Guaranty. Rather, Defendants rely on an affirmative defense: that Mrs. Uppalapati is not liable for the debt of

3

Branson Properties because Plaintiff violated the Equal Credit Opportunity Act ("ECOA") and Federal Reserve Regulation B by requiring Mrs. Uppalapati to guarantee the debt of Branson Properties.[2] 15 U.S.C. § 1691 *et seq.*; 12 C.F.R. § 202.7(d).

Plaintiff Arvest bears the burden of proving that Mrs. Uppalapati is in breach of her personal Guaranty and is responsible for establishing the amount of damages. Defendant Mrs. Uppalapati bears the burden of proving the elements of her ECOA affirmative defense.

### A. The ECOA was enacted to prohibit discrimination in lending practices.

Prior to the ECOA's enactment, banking institutions traditionally refused to grant individual credit to married women without their husband's co-signature. *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). The ECOA was enacted, in part, to end these discriminatory lending practices targeted at married women. *Moran Foods, Inc. v. Mid-Atlantic Mkt. Dev. Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007).

To that end, the ECOA prohibits a creditor from discriminating against *any applicant* for credit on the basis of race, color, religion, national origin, sex or marital status, age, or because the applicant is on public assistance. 15 U.S.C. § 1691(a)(1)and (2) (emphasis added). The statute defines the term "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an

---

[2] In Defendants' initial Answer to the Complaint (Doc. 19), they state under "affirmative defenses" that: "Plaintiff's deed of trust failed to properly describe the real estate that was to be pledged by Branson Resort Properties, LLC, resulting in a diminished price being paid for said real estate upon Plaintiff's foreclosure of said deed of trust, resulting in an enhanced deficiency being due from the Defendants herein." Although the fact section of Defendants' Opposition to Summary Judgment briefly mentions this defense, alleging that the underlying deed of trust "failed to properly describe the real estate in which Plaintiff claimed," (Doc. 56 at 2), Defendants do not advance any argument on this basis. Accordingly, the Court treats this argument as waived. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734–35 (8th Cir. 2009) (finding that failure to make arguments in opposition to summary judgment constitutes waiver of those arguments).

existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. §1691a(b).

The ECOA also authorizes the Board of Governors of the Federal Reserve System[3] (the "FRB") to promulgate regulations to carry out its purposes. 15 U.S.C. §1691b(a). Pursuant to this mandate, the FRB adopted Regulation B defining applicant as "any person who requests or who has received an extension of credit from a creditor," including "any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e). Under the regulations, the term "applicant" includes "guarantors, sureties, endorsers, and similar parties." *Id*. The regulations also limit when a lender can require the signature of persons other than the applicant on credit documents. 12 C.F.R. § 202.7(d)(1). Specifically, the regulations provide:

> Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

12 C.F.R. § 202.7(d)(1).

**B.** **The statute is clear that Mrs. Uppalapti is not an "applicant" covered by the ECOA's non-discrimination provision.**

At the core of the parties' dispute is whether Mrs. Uppalapati is an "applicant" covered by the ECOA's non-discrimination provision. Plaintiff argues that she is not because she never "applied" for credit as required by 15 U.S.C. § 1691(a) of the statute. Defendants, however, maintain that as a guarantor, Mrs. Uppalapati meets the definition of "applicant" as set forth in the FRB's regulations. Plaintiff counters that the regulations are an impermissible expansion of

the statute and argues that the Court should not give them effect. Specifically, Plaintiff contends that the ECOA statutory definition of "applicant" is not ambiguous, and, therefore, Regulation B violates the FRB's authority, improperly expanding the definition of "applicant" to include guarantors.

There is a two part inquiry for reviewing an agency's construction of the statute which it administers. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). First, the court must determine whether the intent of Congress is clear. *Id*. at 842. If so, agencies and courts "must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. If the statute is silent or ambiguous with regard to a specific issue, the court must then decide whether the contested regulation is "based on a permissible construction of the statute." *Id*. at 843. If the regulation is based on a permissible construction of the statute, courts must defer to the administrative agency's interpretation of it. *Id*. at 844; *see e.g., Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980).

The Eighth Circuit has not addressed the level of deference Regulation B warrants, and, therefore, has not ruled on whether the ECOA's definition of "applicant" includes guarantors. Many other courts, however, have considered the issue.

In a relatively analogous case, the Seventh Circuit declined to give effect to the FRB's definition of "applicant," holding that the FRB's interpretation was not entitled to deference because the ECOA's statutory definition of "applicant" was not ambiguous. In the opinion, Judge Posner stated:

---

[3] Specifically, the statute calls for the Consumer Financial Protection Bureau to prescribe regulations to carry out its purposes. 15 U.S.C. §1691b(a).

The Federal Reserve Board, however, has defined "applicant" for credit (the term in the statute) to include a guarantor. We doubt that the statute can be stretched far enough to allow this interpretation. . . . It is true that courts defer to administrative interpretation of statutes when a statute is ambiguous, and that this precept applies to the Federal Reserve Board's interpretation of ambiguous provisions of the Equal Credit Opportunity Act. But there is nothing ambiguous about "applicant" and no way to confuse applicant with a guarantor. What is more, to interpret "applicant" as embracing "guarantor" opens vistas that the Congress that enacted the Act would have been unlikely to accept.

*Moran*, 476 F.3d at 441 (internal citations omitted).

This reasoning has been adopted by the Eastern District of Missouri in *Champion Bank v. Reg'l Dev., LLC*, No. 4:08CV1807 CDP, 2009 WL 1351122, at *3 (E.D. Mo. May 13, 2009) (finding the Seventh Circuit opinion persuasive and noting that "[e]xtending the protections of the ECOA to someone in [defendant wife's] position expands the ECOA beyond its intended purpose and leads to circular and illogical results").

However, other courts have rejected the Seventh Circuit's reasoning, finding that not deferring to the FRB's regulations would undermine the FRB's administrative scheme upon which consumers and creditors have come to rely. The Northern District of Oklahoma, for example, held that:

This Court declines to follow *Moran* and adheres to Regulation B, such that guarantors who are required to sign a guaranty in connection with an extension of credit covered by the ECOA will continue to receive protection. The court's holding in *Moran* eliminates entire aspects of the Federal Reserve Board's implementation scheme. *See, e.g.,* 12 C.F.R. § 202.7(d)(6) and Official Comments (discussing rules governing personal spousal guarantors of corporate credit transaction). Consumers have come to rely upon these rules, and creditors have been trained to follow them. Unless and until the Tenth Circuit mandates that the Federal Reserve Board's definitions and implementation scheme indeed run afoul of congressional intent, this Court adheres to Regulation B, *Silverman,* and other similar cases extending the ECOA's protections to guarantors such as Mrs. Dhaliwal.

Case 6:11-cv-03175-DGK   Document 60   Filed 01/07/13   Page 7 of 12

*Citgo Petroleum Corp.,* No. 08–CV–654–TCK–PJC, 2010 WL 3931496, at *9 (N.D. Okla. Oct. 5, 2010); *see also Anderson v. United Fin. Co.* 666 F.2d 1274, 1276 (9th Cir. 1984) (presuming the regulation to be valid without explanation); *LOL Fin. Co. v. Faison, Jr. Revocable Trust*, No. 09–741, 2010 WL 3118630, at * 7 (D. Minn. July 13, 2010) (declining to follow *Moran* and *Champion* and noting a wariness of "categorically discounting the Federal Reserve Board's Regulations"); *Frontenac Bank v. T.R. Hughes, Inc.*, ED97499, 2012 WL 4486312 (Mo. Ct. App. Sept. 25, 2012) (finding that a wife was protected by the ECOA as a guarantor of the loans at issue in the case).[4]

Here, the Court finds that there is nothing ambiguous about 15 U.S.C. §1691a(b)'s definition of "applicant." Furthermore, the FRB's interpretation of "applicant" to include guarantors is an impermissible expansion of the statute that stretches liability beyond that which Congress intended and in a way that leads to illogical results. For this reason, Mrs. Uppalapti, as a guarantor, is not covered by the ECOA's non-discrimination provision.

### C. Mrs. Uppalapati cannot prove discrimination or that she was "required" to sign the personal Guaranty.

Even if the FRB's definition of "applicant" were authorized such that Mrs. Uppalapati, as a guarantor, was protected by the ECOA's non-discrimination provision, she still would not be entitled to recover because she cannot prove discrimination or that she was required to sign the personal Guaranty.

Plaintiff argues that even under the FRB's definition of "applicant," requiring Mrs. Uppalapati's personal Guaranty was not prohibited by the ECOA because she cannot prove

---

[4] The Court notes that the *Frontenac* opinion is not final and may still be subject to a motion for rehearing or transfer. The Court also notes that it is not bound by this state court decision on a matter of federal statutory law.

discrimination. Specifically, Plaintiff argues that Mrs. Uppalapati's signature as a guarantor was necessary because she owned joint assets, including real estate, with Mr. Uppalapati in a state (North Carolina) where a husband and wife own joint property as tenants by the entireties. *See Martin v. Roberts*, 177 N.C. App. 415 (2006). As such, an individual creditor of only one of them cannot reach jointly owned real estate for satisfaction of a debt. *Id*. at 418.

A number of cases have held that where a married guarantor owns joint assets with his spouse, requiring the guaranty of both spouses does not violate the non-discrimination provisions of the ECOA. *See Moran*, 476 F.3d at 441-442 (finding no discrimination because the list of assets submitted by the applicant husband listed several residences, and so the lender "naturally and correctly assumed that [the wife] had an interest in those assets" and therefore the lender engaged in "sound commercial practice unrelated to any stereotypical view of a wife's role" when it required the wife to cosign along with her husband); *Riggs Nat'l Bank of Washington, D.C. v. Linch*, 36 F.3d 370, 374 (4th Cir. 1994) (finding that a lender did not discriminate against guarantor's wife on the basis of her marital status where assets listed on personal financial statement were jointly owned by both); *F.D.I.C. v. 32 Edwardsville, Inc*., 873 F. Supp. 1474, 1481 (D. Kan. 1995) (finding no genuine issue of material fact to establish that a lender unreasonably required the guaranty of a wife where the only facts before the court were contained in an affidavit from the couple stating that the wife's signature was unnecessary).

It is Defendants' burden to prove Mrs. Uppalapati's affirmative defense, and she cannot "show discrimination merely by the fact that she guaranteed a loan." *Champion*, 2009 WL 1351122, at *1. Defendants' primary argument is that Mrs. Uppalapati's personal Guaranty was

---

*See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

9

unnecessary because each of the Arvest loans to Branson Properties was credit-worthy without it, i.e., each of the Arvest loans was more than adequately secured by Branson Properties, the R&E Guaranty, Mr. Avery's Guaranty, and Mr. Uppalapati's Guaranty. As support for this argument, Defendants maintain that Arvest "did not request nor did it receive any financial information about Vijayasree Uppalapati and could not have relied on her financial condition to underwrite its loans" (Doc. 56, at 2). According to Defendants, the only reason Plaintiff required Mrs. Uppalapati's Guaranty was because she was Mr. Uppalapati's wife (Doc. 56-2, Aff. V. Uppalapati).

The Fourth Circuit has recognized that a determinative factual issue in cases alleging spousal discrimination under the ECOA is whether the lender decided that one spouse was not independently creditworthy before requesting that the other spouse personally guarantee the loan. *See Riggs*, 36 F.3d at 374. Here, however, there is little evidence in the record regarding Arvest's intent in requiring Mrs. Uppalapati to sign as a guarantor. For example, while there is evidence that at the time of the 2006 Arvest loans, Mr. Uppalapati owned joint assets with Mrs. Uppalapati, including interest in a real estate company, their personal residence, bank accounts, and household goods (Doc. 53, Exhibit 40, Dep. R. Uppalapati, at 91, 93, 97), there is no evidence that Arvest considered these assets as a necessary condition to guaranteeing the Branson Properties loans.

Yet there is no evidence to the contrary either. While Defendants claim that Mr. Uppalapati had substantial assets apart from Mrs. Uppalapati, there is no evidence to show that Mr. Uppalapati was creditworthy for the Arvest loan without the assets jointly held with his wife. Accordingly, Mrs. Uppalapati has failed to set forth sufficient facts to show discrimination.

10

Furthermore, Mrs. Uppalapati has not satisfied her burden of showing that she was "required" to sign the personal Guaranty. Mrs. Uppalapati's Guaranty stated that it "was entered into at the request of the borrower," and was made "to induce [Arvest], at [its] option, to make loans" (Doc. 53-4 at ¶¶ 2, 12). It further included Mrs. Uppalapati's personal acknowledgment that she "signed this guaranty to induce [Arvest] to extend such credit." *Id.* at 13.

Mrs. Uppalapati now attempts to contradict these statements with her affidavit that she signed the personal Guaranty "only after [she] was told by [her] husband that Arvest Bank required [her] personal guarantee as a condition to the making of the Arvest loans to [Branson Properties]" (Doc. 56-2). However, conclusory allegations in an affidavit are not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

Accordingly, Mrs. Uppalapati cannot properly contradict her own signed acknowledgment in the Guaranty contract or provide any evidence that she was "required" to sign it. Thus, she has no basis for alleging that Arvest violated the ECOA by "[requiring] the signature of an applicant spouse." 12 C.F.R. § 202.7(d). Accordingly, the Court finds that Defendant Mrs. Uppalapati has failed to show a genuine issue of material fact on her ECOA affirmative defense.[5]

## Conclusion

---

[5] Because Mrs. Uppalpati's ECOA defense is insufficient to defeat summary judgment against her, the Court will not address Plaintiff's argument that Mrs. Uppalapati cannot use her ECOA affirmative defense to invalidate her Guaranty (Doc. 53, at 15).

Case 6:11-cv-03175-DGK   Document 60   Filed 01/07/13   Page 11 of 12

For the reasons discussed herein, Plaintiff's motion for summary judgment is granted with respect to all four Defendants on all claims.

**IT IS SO ORDERED.**

                                                /s/ Greg Kays
                                            GREG KAYS, JUDGE
                                            UNITED STATES DISTRICT COURT

DATED:  January 7, 2013